LARRY O. FOLKS (#012142)
**FOLKS & O'CONNOR, PLLC**
1850 North Central Avenue, Suite 1140
Phoenix, AZ 85004
Telephone: (602) 256-5906
Facsimile: (602) 256-9101
E-mail: folks@folksoconnor.com

*Attorneys for the Movant, M&I Marshall & Ilsley Bank*

# IN THE UNITED STATES BANKRUPTCY COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re: | Chapter 11 Proceeding |
| TREVOR CRAIG BAUGH, | Case No.: 4:09-bk-04901-EWH |
| Debtor. | **OBJECTION TO DISCLOSURE STATEMENT** |
| | Hearing Date: December 8, 2009<br>Hearing Time: 1:30 p.m.<br>Location: 38 South Scott Ave., Courtroom 446, Tucson, AZ |

M&I Marshall & Ilsley Bank ("M&I Bank"), a secured creditor and party-in-interest in this proceeding, by and through its undersigned counsel, hereby objects to approval of Trevor Craig Baugh's, the debtor and debtor-in-possession (the "Debtor") Disclosure Statement (the "Disclosure Statement"), for the reason that the Disclosure Statement related to a Plan that cannot be confirmed pursuant to 11 U.S.C. §1129(b). This Objection is supported by: (1) the accompanying Memorandum of Points and Authorities; and (2) the Declaration of Dave Harper In Support Of Motion For Relief From The Automatic Stay located at Docket No. 47 (the "Harper Declaration")

## Memorandum Of Points And Authorities
### Introduction

The Debtor filed his Disclosure Statement. M&I Bank, a creditor and party-in-interest, hereby objects to approval of the Disclosure Statement as it relates to the Debtor's Plan (the "Plan"), because its treatment of M&I Bank's claim is not consistent with the requirements of 11 U.S.C. §1129(b). As discussed below, the Debtor's Plan is not fair and equitable.

On March 17, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for bankruptcy relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). Prior to the Petition Date, M&I Bank made a loan (the "Loan") to the Debtor. The Loan is secured by M&I Bank's first-priority security interest in and lien upon a duplex investment property owned by the Debtor located at 482-484 South Convent Avenue, Tucson, Arizona 85701 (the "Duplex"). As a result, the Duplex serves as collateral for payment of the balance due under the Loan.

The Disclosure Statement as it relates to the Plan, proposes to limit M&I Bank's secured claim to an amount of $200,000.00 and to treat the balance of M&I Bank's claim as unsecured. In addition, the Disclosure Statement extends payment of M&I Bank's claim to thirty years when the Note matures on June 1, 2022 and proposes to pay M&I Bank's claim at 6% per annum as opposed to 6.750% as provided for in the Note.

M&I Bank has obtained a full MAI certified appraisal, including a valuation date of June 23, 2009, of the Duplex (the "Appraisal"). The Appraisal was prepared by Dave Harper ("Harper") who is an Arizona Board Certified Appraiser with more than 18 years of appraisal experience. Harper appraised the Duplex at $305,000.00. The Duplex is declining in value and there is no "equity cushion" in the Duplex available to adequately protect M&I Bank's lien interest.

## II.    BACKGROUND

### A.    Description of M&I Bank's Pre-Petition Loan To The Debtor

1.    On May 21, 2007, the Debtor executed and delivered to M&I Bank a Promissory Note in the original principal amount of $320,000.00 (the "Note"). A true and accurate copy of the Note is attached to the Motion for Relief from Stay (the "Motion for Relief") filed by M&I Bank (Docket 27) as <u>Exhibit 1</u> and is herein incorporated by this reference.

2.    On May 21, 2007, the Debtor, as trustor, executed and delivered to M&I Bank, as beneficiary, a Deed of Trust and Assignment Of Rents which was recorded with the Pima County Recorder on May 22, 2007, as Document No. 2007-0990641 as a lien upon the Duplex (the "Deed of Trust"). A true and accurate copy of the Deed of Trust is attached to the Motion for Relief as <u>Exhibit 2</u> and is herein incorporated by this reference.

3.    M&I Bank contends that the Deed of Trust evidences its valid, enforceable and perfected first-priority lien upon the Duplex for the balance due under the Note.

4.    An event of default under the Note and Deed of Trust (collectively, the "Loan Documents") includes, without limitation, the Debtor's failure to make payments as they become due and owing.

5.    The Debtor has defaulted under the terms of the Loan Documents by, among other things, his failure to make certain monthly installment payments as they have become and owing under the Note.

6.    As of the Debtor's Petition Date, M&I Bank was owed the following sums under the Loan Documents: (i) $305,987.81 of unpaid principal; (ii) $12,966.23 of accrued and unpaid interest; (iii) $707.95 of late charges; (iv) $1,721.15 of deferred interest due to a September of 2008 loan extension; (v) $100.00 for a Broker's Price Opinion ("BPO"); (vi) $21.00 for a property preservation fee; and (vii) $1,693.72 of trustee's fees, attorneys fees and costs and title company fees and costs, for a total indebtedness of $323,197.86 (the "Loan Balance").

7. M&I Bank is the holder and owner of the Loan Documents.

**B.     M&I Bank's Lien Position is Not Adequately Protected**

8. Upon information and belief, the Duplex is declining in value due to current market conditions since the Petition Date. In addition, M&I Bank contends that there is no "equity cushion" protecting its lien interest in the Duplex. Accordingly, under the circumstances, M&I Bank maintains that its lien position is not adequately protected at this time.

**C.     There is No Equity in the Duplex**

9. Schedule D of the Schedules of Assets and Liabilities filed by the Debtor lists his own estimate of the value of the Duplex to be $200,000.00.

10. M&I Bank has obtained an Appraisal dated June 23, 2009 which lists the "as is" value of the Duplex to be $305,000.00. A true and accurate copy of the Appraisal is attached to the Harper Affidavit at Docket 47 and is herein incorporated by this reference.

11. On the Debtor's Petition Date, M&I Bank's first-priority consensual Deed of Trust lien encumbrance upon the Duplex was the Loan Balance of $323,197.86.

**D.     The Duplex is not necessary for an effective reorganization**

12. The Duplex is not the Debtor's primary residence, it is clearly an investment property, it has no equity in it to assist in the Debtor's reorganization and it is not generating significant rents. As a result, it is not necessary for an effective reorganization in this Chapter 11 personal bankruptcy proceeding.

<u>**Legal Analysis**</u>

The Disclosure Statement also should not be approved because the Debtors' Plan, on its face, cannot be confirmed. *See, e.g., In re Dakota Rail, Inc.,* 104 B.R. 138, 143 (Bankr. D. Minn. 1989). At least one court has found that if a bankruptcy plan does not comply with the confirmation requirements of § 1129 of the Bankruptcy Code, then it is "incumbent upon the Court to decline approval of the disclosure statement." *In re Spanish Lake Associates,* 92 B.R. 875, 877 (Bankr. E.D. Mo. 1988), *citing In re Pecht,* 57 B.R. 137 (E.D. Va. 1986).

4

*See also, In re Atlanta West VI,* 91 B.R. 620, 622 (Bankr. N.D. Ga. 1988); *In Re Unichem Corp.,* 72 B.R. 95, 98 (Bankr. N.D. Ill. 1987); *aff'd.,* 80 B.R. 448 (N.D. Ill. 1987); *In re McCall,* 44 B.R. 242, 243-44 (Bankr. E.D. Pa. 1984); *In re Kehn Ranch, Inc.,* 41 B.R. 832, 832-33 (Bankr. S.D. 1984); and *In re Genesee Cement, Inc.,* 31 B.R. 442, 443-44 (Bankr. E.D. Mich. 1983).

This Objection to the Disclosure Statement does not intend to fully include, or analyze, M&I Bank's many legal objections to confirmation of the Debtor's Plan. M&I Bank specifically reserves the right to file a detailed Objection to confirmation of the Plan if required. The following list, however, briefly outlines several important legal infirmities of the Debtor's Plan that should both preclude its confirmation and approval of the Disclosure Statement.

**The Plan Fails To Satisfy**
**The "Cramdown" Provisions Of §1129(b)**

The Plan must satisfy the requirements of §1129(b) in order for it to be confirmed. In a cramdown situation, the Plan may only be confirmed "if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. §1129(b)(1).

Section 1129(b)(2) sets forth the requirements necessary for a plan to be considered "fair and equitable." If a plan does not comply with the standards of §1129(b)(2), it is not fair and equitable and cannot be confirmed. In re Ambac La Mesa Limited Partnership, 115 F.3d 650 (9th Cir. 1997); In the Matter of D&F Construction, Inc., 865 F.2d 673, 675 (5th Cir. 1989). Moreover, technical compliance with the requirements of §1129(b)(2) does not necessarily mean that a plan may be confirmed. The statutory requirements of §1129(b)(2) are minimum requirements, and a plan may be found not fair and equitable even though it meets the statutory requirements of that section. Id. See also In re EFH Grove Tower Associates, 105 B.R. 310 (Bankr. E.D.N.C. 1989); In re Cheatham, 78 B.R. 104 (Bankr. E.D.N.C. 1987), aff'd, 91 B.R. 377 (E.D.N.C. 1988).

Here, the Debtor's Plan cannot be confirmed because it is not "fair and equitable" with respect to M&I Bank's claim for two reasons: (i) the Plan does not propose to pay a

"market rate" of interest to M&I Bank upon its Class 7 secured claim; and (ii) the Plan seeks to convert M&I Bank's Note with a maturity date of June 1, 2022 to a Note payable in 30 years which cannot be deemed to be "fair and equitable".

### 1. The Plan Fails To Propose To Pay A "Market Rate" Of Interest To M&I Bank Upon Its Class 7 Secured Claim

The Debtor's Plan is not fair and equitable to M&I Bank, because it fails to propose to pay a "market rate" of interest upon the bank's Class 7 secured claim. In particular, Bankruptcy Code Section 1129(b)(2)(A)(i)(II) requires that, on its secured claims, M&I Bank "receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of [M&I Bank's] interest in the estate's interest in such property." This language has been interpreted to require that a secured creditor receive the present value of its claim, i.e., a "market rate" of interest on the amount of its claim. The United States Supreme Court held in Till v. SCS Credit Corporation, 541 U.S. 465, 124 S. Ct. 1951 (U.S. 2004), that the appropriate method for determining the proper interest rate on a cramdown loan is the "formula approach" in which the Prime Rate of Interest is adjusted based on the risk of nonpayment, the characteristics of the loan, and the nature of the security. Id. at 479-80. Various other courts have held that the rate of interest applied by the court must be based on the risks associated with the debtor and the risk of default. See In re Fowler, 903 F.2d 694, 697 (9th Cir. 1990); In re Camino Real Landscape Maintenance Contractors, Inc., 818 F.2d 1503, 1505 (9th Cir. 1987); In re Monnier Brothers, 755 F.2d 1336, 1338 (8th Cir. 1985); In re Welco Industries, Inc., 60 B.R. 880, 883 (9th Cir. BAP 1986); In re Northwest Timberline Enterprises, Inc., 348 B.R. 412 (Bankr. N.D. Tex. 2006). In In re Miami Center Associates, Ltd., 144 B.R. 937 (Bankr. S.D. Fla. 1992), the bankruptcy court concluded that payment of a secured creditor's claim over ten (10) years at an interest rate of ten percent (10%) per annum did not provide the secured creditor with the present value of its claim. Id. at 942.

The Ninth Circuit Bankruptcy Appellate Panel has held that the appropriate interest rate on a secured creditor's claim is the prevailing market rate for the particular type and quality of loan contemplated in the proposed plan. In re Welco Industries, 60 B.R. at 883.

In the present case, Debtor's Plan proposes to pay 6% interest upon M&I Bank's secured claim. The Note provides that the applicable interest rate is 6.750%. Furthermore, the Debtor has presented no evidence to support a finding that the interest rate proposed meets the requirements to be deemed "market rates" of interest. Additionally, the Debtor's Plan provides that M&I Bank is entitled to no accrual of interest, nor any payment of interest, from the bankruptcy petition date of March 17, 2009 until the Plan is confirmed. As such, the Debtor's Plan is not "fair and equitable".

## 2. The Plan Proposes Terms For The New Note To Be Issued To M&I Bank That is Not "Fair And Equitable"

The Debtor's Plan proposes to reduce the amount of M&I Bank's secured claim from $323,197.86 to $200,000.00. The Debtor concedes he does not have a current appraisal. Moreover, there is no other evidence that supports the Debtor's valuation of the Property. Importantly, M&I Bank has obtained an appraisal as current as June 2009 that values the Duplex at $305,000.00. Certainly, forcing M&I Bank to essentially modify its loan and reduce its secured claim by over $100,000.00 is not fair and equitable.

In addition, the Debtor seeks to convert M&I Bank's Note which currently expires on June 1, 2022, which is in thirteen years, into a new note payable over thirty (30) years. M&I Bank asserts that such a drastic and extended change in the terms and repayment period for the debt obligation precludes the Plan from being "fair and equitable" under §1129(b)(2). In particular, bankruptcy courts regularly refuse to confirm plans of reorganization if the proposed repayment period to a creditor is too lengthy. See In re Miami Center Associates, Ltd., 144 B.R. 937 (Bankr. S.D. Fla. 1992) (ten year repayment term was too long and rendered plan not "fair and equitable"); In re Manion, 127 B.R. 887 (Bankr. N.D. Fla. 1991) (conversion of five year balloon note to twenty year payout was not "fair and equitable" to fully secured creditor and therefore plan could not be confirmed). Clearly, conversion of what is a short-term debt obligation into 30-year obligation cannot be considered by this Court to be "fair and equitable" and establishes grounds for denial of confirmation of Debtor's Plan, and in turn denial of approval of Debtor's Disclosure Statement.

## CONCLUSION

Debtor's Plan fails to satisfy the requirements of §§1129(b). Accordingly, M&I Bank

respectfully requests that this Court deny approval of Debtor's Disclosure Statement.

DATED this 1st day of December, 2009.

**FOLKS & O'CONNOR, PLLC**

By_____/s/ Lisa S. Kass_____
Larry O. Folks

Lisa S. Kass
Suite 1140

1850 North Central Avenue
Phoenix, AZ 85004

*Attorneys for M&I Marshall & Ilsley*

*Bank*

**ORIGINAL** of the foregoing electronically filed this
1st day of December, 2009, with:

United States Bankruptcy Court
in and for the District of Arizona
38 S. Scott Avenue, 2nd Floor
Tucson, AZ 85701

**COPY** of the foregoing mailed
this 1st day of December, 2009, to:

Trevor Craig Baugh
92 West Simpson Street
Tucson, AZ 85701
*Debtor*

Eric Slocum Sparks, Esq.
Eric Slocum Sparks, PC
110 South Church Avenue, Suite 2270
Tucson, AZ 85701
*Attorney for the Debtor*

List of Twenty Largest Unsecured

Office of the United States Trustee
230 North Central Avenue, Suite 204
Phoenix, AZ 85003

By_____Kathlyn Maez_____
   *An Employee of Folks & O'Connor, PLLC*

10